E-FILED
Friday, 24 May, 2013  02:22:52 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| THE KANSAS CITY SOUTHERN RAILWAY COMPANY and NORFOLK SOUTHERN RAILWAY COMPANY, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   NO. 13-3144 |
| SNY ISLAND LEVEE DRAINAGE DISTRICT, a political subdivision of the State of Illinois, | ) ) ) ) ) |
| Defendant. | ) |

## OPINION

RICHARD MILLS, U.S. District Judge:

On May 17, 2013, Plaintiffs The Kansas City Southern Railway Company and Norfolk Southern Railway Company filed a Complaint for Injunctive Relief [d/e 1] and Motions for Preliminary Injunction [d/e 4] and a Temporary Restraining Order [d/e 5].  On May 20, 2013, Defendant Sny Island Levee Drainage District filed Affidavits and Exhibits in Opposition to the Plaintiffs' Motion [d/e 12], in addition to a Memorandum in Opposition to the Motion [d/e 13].  On May 20, 2013, the Court held a

Hearing on the Plaintiffs' Motion for Injunctive Relief.

Because notice was provided and both parties have now been heard, the Court considers the Plaintiffs' Motion for a Temporary Restraining Order to be moot. Their Motion for a Preliminary Injunction is properly before the Court.

## I. BACKGROUND

### A. Introduction

Plaintiffs Kansas City Southern Railway Company ("Kansas City Southern") and Norfolk Southern Railway Company ("Norfolk Southern") (or collectively, "the Plaintiffs") filed a Complaint for injunctive relief. The Defendant is Sny Island Levee Drainage District ("Sny" or "the District"), a political division of the State of Illinois organized under the laws of the State of Illinois to construct, maintain, and repair a system of levees and drains located in Adams, Pike and Calhoun counties. Sny is an Illinois municipal corporation for a special and limited purpose and is vested with the power to tax land owners within Sny's boundaries to fund its operations and to sue and be sued.

Kansas City Southern and Norfolk Southern seek relief based on what they allege is an assessment by Sny that discriminates against railroads. Section 11501 of the Railroad Revitalization and Regulatory Reform Act of 1976 (4-R Act), *see* 49 U.S.C. § 11501, was enacted by Congress to end the discriminatory taxation of railroads by state and local governments. Section 11501(c) of the 4-R Act confers jurisdiction upon federal district courts to grant equitable relief such as that which is requested here.

According to the Complaint, the total amount of land within Sny's boundaries is approximately 113,396 acres.  Kansas City Southern and Norfolk Southern operate portions of their railroads over land located within Sny's boundaries that consists of 212.32 acres for Kansas City Southern and 145.17 acres for Norfolk Southern.  On April 5, 2011, pursuant to Illinois statute, Sny petitioned the Circuit Court for Pike County, Illinois, for authority to levy a one-time "additional assessment" against all lands in the district.  On December 5, 2011, the Circuit Court entered an order approving an additional assessment in the amount of $5,853,162.00.  The Plaintiffs allege the order was a legislative act because

it looked to the future and changed existing conditions by making a new rule to be applied thereafter to all lands within the District's boundaries.

On December 12, 2012, Sny filed with the Pike County Circuit Court an assessment roll to spread the $5,853,162.00 additional assessment on lands located within Sny's boundaries based on "benefit" to the land from the District's improvements.   The Plaintiffs are required to file any objections they have to the assessment roll with the Pike County Circuit Court on or before June 4, 2013, after which the Pike County Circuit Court will hear evidence and determine the amount to be assessed against Kansas City Southern and Norfolk Southern.  The Plaintiffs state they are seeking emergency relief because the money becomes due once the circuit court approves the assessment.  It cannot be refunded.  Sny claims that Plaintiffs are seeking a stay of a pending judicial proceeding in circuit court before that court has considered the issues.

B. Tax amount based on the additional assessment

Based on the assessment roll for the additional assessment, Kansas City Southern will be taxed $103,612.52 (or $91,084.59 if prepaid in one

4

installment, instead of five annual installments) for the additional assessment.  Norfolk Southern will be taxed $117,139.71 (or $102,976.18 if prepaid in one installment) for the additional assessment.

In the Complaint, the Plaintiffs allege that Sny's use of a benefits methodology to spread assessments will impose a disproportionate share of the additional assessment on Kansas City Southern and Norfolk Southern. If the assessments were spread on a per acre basis adjusted by elevation, Kansas City Southern and Norfolk Southern would pay, respectively, 0.225% and 0.143% of the total district-wide assessment and all other properties within Sny's boundaries would pay 99.632% of the total district-wide assessment.  Based on the assessment roll for the additional assessment, Kansas City Southern and Norfolk Southern will be required to pay, respectively, 1.77% and 2.00% of the total district-wide assessment and all other properties within Sny's boundaries will pay 96.23% of the total district-wide assessment.

According to the Complaint, if Sny had used the methodology it historically has used to assess lands in the district, Kansas City Southern's

portion of the additional assessment would be $13,169.61 and Norfolk Southern's portion would be $8,370.02. The Plaintiffs allege the additional assessment discriminates against them in that it treats the Railroads different than "other industrial and commercial properties" in the district.

According to the Plaintiffs' experts, the average amount of flood damage to other industrial and commercial properties if Sny's levees were not present is $550,566.  The average amount of flood damage to Kansas City Southern's property in the district if Sny's levees were not present is $24,264.29.  The average amount of flood damage to Norfolk Southern's property in the district if Sny's levees were not present is $55,110.76.

According to the damage estimates of Nicholas Pinter, Ph.D., a geologist, and David Brookings, P.E., an engineer with 40 years of experience in railroad engineering and maintenance-of-way, the assessment-to-benefit ratio for the additional assessment is 0.236 for Kansas City Southern, 0.410 for Norfolk Southern, 0.360 for the two railroads combined, and 0.053 for other commercial and industrial properties.  Mr. Brookings estimated the damages to the railroads.  Using software

developed by the Federal Emergency Management Agency, Dr. Pinter estimated damages to what he claims are 17 other commercial and industrial properties.[1]  Once the damage estimates were converted into annualized "benefit" amounts, Donna Beck Smith, C.P.A., a forensic accountant, compiled the data and compared it to the assessments levied against each property.

The Plaintiffs allege that based on a comparison of assessment-to-benefit ratios, Sny's assessment roll for the additional assessment would result in the railroads being assessed at a rate 52.5 times higher than other commercial and industrial properties.  Kansas City Southern would be assessed at a rate more than 80 times higher, while Norfolk Southern would be assessed at a rate more than 40 times higher than other commercial and industrial properties.

The Complaint alleges that if the Plaintiffs were taxed at the same assessment-to-benefit ratio as the other commercial and industrial

---

[1]The Plaintiffs state that they expect to locate additional information regarding a number of other commercial and industrial properties within the District through discovery.

properties, then Kansas City Southern's assessment would be $1,290.62 and Norfolk Southern's assessment would be $2,931.34.

Sny has submitted the Declaration of Michael H. Reed, who has been its superintendent and treasurer for over 18 years. Mr. Reed states that the District's levees and drainage systems protect an alluvial plain that encompasses some of the most productive farm land in the world. Mr. Reed further states that Dr. Pinter's classification of some of the 17 properties as commercial and industrial or within the District is not accurate. Some of the properties are only partially in the District or are not in the District. Other properties are partially residential and partially commercial. Another property is agricultural and partly recreational. Other properties consist of a farm, small portions of which are recreational. Another property is a residence.

Additionally, Mr. Reed states that Dr. Pinter's affidavit omits commercial and industrial properties in the District that benefit from Sny's works and improvements. These include several properties that receive significant benefits, such as the pipelines and utilities in the district.

8

Sny has also submitted the Declaration of Michael D. Klingner, P.E, who is the President and CEO of Klingner & Associates, P.C., an engineering, architectural, environmental and site development firm. Mr. Klingner is in charge of the department within the firm that specializes in water resources. That department represents approximately 30 levee and drainage districts in Illinois, Missouri and Iowa and the firm is the engineer of record in 25 of those districts. Mr. Klingner states that his firm has over time represented over 50 levee and drainage districts in the Upper Mississippi and Missouri River Basins on all aspects of water resources engineering. Klingner and Associates has worked as an engineering consultant to Sny since 1905 and is currently its engineering firm of record.

In 2011, Sny requested that Klingner & Associates determine the total benefits to property within the District from the District's works and improvements. Mr. Klingner states that there are two distinct types of benefits provided by the District: (1) the benefit associated with protection by levees against river flooding; and (2) the benefit associated with protection by drainage against interior flooding.

9

According to Mr. Klingner, the project requested by Sny took 13 months to complete.  Mr. Klingner worked with two other professionals from his firm: James W. Powell, P.E., a hydrologic/hydraulic engineer; and Gavin H. Risley, a Certified Flood Plain Manager.  A report, entitled Sny Island Levee Drainage District Assessment of Interior Drainage & Levee Protection Benefits, was prepared and signed by Mr. Klingner and Mr. Powell as professional engineers.  That report was submitted as an exhibit at the Hearing.

C. 4-R Act and relief requested

Section 11501 states in pertinent part:

(b)    The following acts unreasonably burden and discriminate against interstate commerce, and a State, subdivision of a State, or authority acting for a State or Subdivision of a State may not do any of them

*  *  *

(4)    Impose another tax that discriminates against a rail carrier providing transportation subject to the jurisdiction of the Board [Surface Transportation Board] under this part.

The Plaintiffs allege that because the additional assessment is a general levy

against all lands within Sny's boundaries designed to cover Sny's general options, the general assessment is "another tax" within the meaning of § 11501(b)(4) and may not lawfully discriminate against the railroad.  The Plaintiffs further assert that this disparity in the assessment-to-benefit ratio between railroad properties and "other industrial and commercial properties" demonstrates that the Sny's additional assessment discriminates against railroad properties in violation of § 11501(b)(4).

Kansas City Southern and Norfolk Southern request injunctive relief prohibiting the collection of the alleged discriminatory portion of the additional assessment pursuant to the statute.  The Plaintiffs contend they will suffer immediate and irreparable harm if Sny is not enjoined from assessing and collecting the discriminatory portion of the additional assessment against Kansas City Southern and Norfolk Southern because the assessment becomes a lien upon the lands assessed once the Pike County Circuit Court enters an order approving the assessment roll.  The assessment will become due and payable within 30 days of the entry of the order.   Kansas City Southern and Norfolk Southern would have no

adequate remedy at law because although § 11501 guarantees a federal forum for claims of tax discrimination, it does not permit federal district courts to grant refunds of taxes which have been paid.

Sny contends that any delay due to the Plaintiffs' request for injunctive relief may cause the District to suffer significant damages. The Pike County Circuit Court approved the additional assessment to pay obligations incurred by the District for certain repair and operation costs. Mr. Reed states that the District is paying a significant annual amount on an outstanding loan from Mercantile Bank, including interest totaling $149,317.02 in 2013. The interest payment will be made from Sny's "annual maintenance" income or from increasing the District's debt. As a result, the available funds Sny has to provide for the annual operation and upkeep of the drainage district will be reduced.

Mr. Reed states that the District is planning to issue bonds to replace the existing Mercantile loan, which will be payable from the collection of the additional assessment over a five-year period. The issuance of the bonds will significantly reduce the interest that Sny is paying on the

outstanding debt, which will save the District a significant amount in interest payments.  Moreover, the District intends to replenish its reserve funds with a portion of the proceeds of the bonds to be issued in conjunction with the additional assessment.  Sny's reserve funds have been depleted due to circumstances outside of its control.  Until the bonds are issued, the District will have no reserve funds to cover emergency situations or significant operating expenses.  Mr. Reed states that the new funds have taken on new urgency in recent months because of excessive rainfall, which has resulted in increased seepage from the river and flood threats from the high river stages.

Sny contends that the Plaintiffs' litigation challenging the proposed assessments against their properties means that final approval of the entire assessment roll for the additional assessment will be delayed.  That may serve to delay the District's issuance of the bonds.  The District is concerned that it may not be able to obtain the appropriate orders from the Pike County Circuit Court and/or obtain the required approval from bond counsel to issue the bonds with the Plaintiffs' objections pending.

13

Accordingly, Sny asserts that Plaintiffs' request for injunctive relief will threaten significant damages to the District if it is unable to reduce interest costs to replenish the reserve funds that enable it to protect the property owners within the District in the event of emergency situations or other extraordinary expenses.

The Plaintiffs' objection concerns Sny's methodology for determining benefits within the District. The benefits are the basis of determining the additional assessment amount for each of the benefitted properties. Sny contends that because this is a factual determination governed by state law, the initial determination should be made in the Circuit Court of Pike County.

## II. DISCUSSION

A. Legal standard

The 4-R Act prohibits a State or a subdivision of a State from imposing a tax that discriminates against a railroad. *See* 49 U.S.C. § 11501(b)(4). Section 11501(c) provides in pertinent part:

> [A] district court of the United States has jurisdiction . . . to prevent a violation of subsection (b) of this section. Relief may

be granted under this subsection only if the ratio of assessed value to true market value of rail transportation property exceeds by at least 5 percent of the ratio of assessed value to true market value of other commercial and industrial property in the same assessment jurisdiction.  The burden of proof in determining assessed value to true market value is governed by State law.

49 U.S.C. § 11501(c).

The parties dispute the proper standard for granting injunctive relief. Under the common law, a party seeking a preliminary injunction "must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm that the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).  In a prior lawsuit brought by the Plaintiff Railroads, Judge Scott applied the common law standard.  *See Kansas City Southern R. Co. v. Borrowman*, No. 09-3094, 2009 WL 2603113, at *7 (C.D. Ill. 2009).

Kansas City Southern and Norfolk Southern note that other courts have held that railroads seeking injunctive relief under the 4-R Act do not

have to meet that standard.  "[A] railroad seeking statutorily authorized injunctive relief from alleged tax discrimination under the 4-R Act is not governed by these equitable criteria." *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 479 (2d Cir. 1995).  In such circumstances, "a railroad need only demonstrate that there is 'reasonable cause' to believe that a violation of the 4-R Act has occurred or is about to occur." *Id*. (quoting *CSX Transp. v. Tennessee State Bd. of Equalization*, 964 F.2d 548, 551 (6th Cir. 1992)).[2]  A mere "possibility" of a violation of the 4-R Act is not sufficient.  *See CSX Transp*., 964 F.2d at 555.  The Sixth Circuit went on to explain:

> If the standard could be met merely by presenting an affidavit from an expert claiming, based on any methodology, that a state's taxation scheme discriminated against railroads, then the decision of whether to issue an injunction would, in most instances, be taken out of the hands of the district court. . . . The district court must make a preliminary determination,

---

[2]In the previous lawsuit, Sny argued that the lesser "reasonable cause" standard applied in determining whether a preliminary injunction should issue.  *See Kansas City Southern R. Co. v. Borrowman*, No. 09-3094, Doc. No. 22, at 7.  Here, Sny suggests that the common law standard should apply because the Court previously used that standard, *see id.*, Doc. No. 27, at 17, while contending that Plaintiffs cannot meet their burden under either standard.

16

based on the evidence that has been submitted by the plaintiff and the responses made at that point, whether there is reasonable cause to believe that the Act has been violated.

*Id*.

Based on the current record and, for the reasons that follow, the Court concludes that Plaintiffs have not shown they are entitled to injunctive relief under either the common law or the "reasonable cause" standard.

### B. Anti-Injunction Act and Court's authority to issue injunction

Sny contends that the issuance of an injunction would violate the Anti-Injunction Act. The Court does not agree. The Anti-Injunction Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. The Anti-Injunction Act does not apply to proceedings that are legislative in nature. The approval of a rate by the Pike County Circuit Court establishes a rule for the future, and thus is legislative and not judicial. *See Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 216 (1908) ("The

establishment of a rate is the making of a rule for the future, and therefore is an act legislative, not judicial, in kind."). In a prior case involving the same parties, the Seventh Circuit left open the question of whether the proceedings under the Illinois Drainage Code were judicial in nature, though it suggested that the state circuit court was acting in a legislative capacity. *See Kansas City Southern Railway Co., et al. v. Koeller*, 653 F.3d 496, 504 (7th Cir. 2012) ("Because the court was approving a fee, we might be inclined to agree [it was acting in a legislative capacity."]).

Accordingly, the Court concludes that the Anti-Injunction Act does not prevent it from granting the equitable relief requested by the Plaintiffs.

## C. Whether Plaintiffs are entitled to preliminary injunction

In determining whether the District's tax discriminates against railroads, Kansas City Southern and Norfolk Southern are to be compared to other "commercial and industrial properties." *See Koeller*, 653 F.3d at 508-09. Therefore, Kansas City Southern and Norfolk Southern must be treated the same as any other commercial and industrial property owners within Sny's boundaries. If a benefit basis is employed, then it must be

18

applied to the entire scheme on a consistent basis. This includes agricultural properties and other commercial and industrial properties, in addition to railroad properties. *See id*. at 512.

The merits of this dispute come down to a battle of the experts regarding the methodology for the assessment. The District's methodology is discussed in the report prepared by Mr. Klingner and his colleagues. Mr. Klingner determined the annual benefits that all properties receive as a result of the District's works and improvements. The types of benefits were separated into levee protection benefits and interior drainage benefits, with the latter being assessed only to agricultural properties. According to the report, Mr. Klingner employed a uniform methodology for all types of properties, including commercial and industrial properties, in determining annual benefits to each property. Mr. Klingner then directed the allocation of the additional assessment among the benefitted property in the District in proportion to the benefit to those properties. Based on this process, Sny contends there is no discrimination in levying the special assessment. All commercial and industrial properties will pay the exact same percentage of

19

their annual benefit, approximately 25%.

The Plaintiffs maintain that the additional assessment means that the railroads will have to pay significantly higher assessments than other commercial and industrial properties.  Sny contends that it is not apparent how the Plaintiffs' experts arrived at their conclusions.  However, they contend that Dr. Pinter's estimated damages from a 100-year flood to Norfolk Southern are much lower than the actual costs testified to by Norfolk Southern's own witness in the prior case.  Sny further asserts that the Plaintiffs' estimates of damages as to other commercial properties are much higher than those arrived at by Mr. Klingner.  Additionally, according to Mr. Reed, many of the properties used in Dr. Pinter's analysis are either not in the District or do not qualify as commercial and industrial.  Finally, some of the commercial and industrial properties located in the District are not included in his study.

At most, the Plaintiffs have established the possibility of a violation of the 4-R Act.  The Court concludes that Plaintiffs have not demonstrated a reasonable likelihood of success on the merits or reasonable cause that a

violation of the 4-R Act is about to occur.  Accordingly, there is not enough to justify the entry of a preliminary injunction under either the common law or "reasonable cause" standard.  Based on the record before the Court, it is at least as likely that the additional assessments against Kansas City Southern and Norfolk Southern are not discriminatory.  If the conclusions of Dr. Pinter and the Plaintiffs' experts stood unchallenged, then the Court might have a legitimate basis for finding the additional assessments are discriminatory and that equitable relief might be appropriate.  However, the District's report prepared by Mr. Klingner and his colleagues challenges Dr. Pinter's methodology and opinion that the additional assessments are discriminatory against the Plaintiffs.

The District has raised questions about the methodology used by Dr. Pinter.  Even under the less stringent standard, a plaintiff cannot establish that an injunction is appropriate "by presenting am affidavit from an expert claiming, based on any methodology, that a state's taxation discriminated against railroads." *See CSX Transp.*, 964 F.2d at 555.

Based on all of the evidence that has been submitted, the Court

concludes there is a legitimate dispute as to whether the assessment is discriminatory.  Accordingly, the Plaintiffs have not demonstrated that they are entitled to a preliminary injunction.

The Court further concludes that the entry of an injunction would be particularly inappropriate here when the Plaintiffs already have a potential remedy in the Pike County Circuit Court.  Kansas City Southern and Norfolk Southern can bring a similar challenge in Pike County Circuit Court by filing objections to the assessment roll and presenting evidence at a hearing.  *See* 70 ILCS 605/5-8.  The Plaintiffs may contend before that court that they are being discriminated against under the 4-R Act.  *See* 49 U.S.C. § 11501(c).

Based on the foregoing, the Court concludes that equitable relief is not warranted.[3]

<u>Ergo</u>, the Motion of Plaintiffs The Kansas City Southern Railway Company and Norfolk Southern Railway Company for a Temporary

---

[3]The District has offered several other reasons why it believes the Plaintiffs are not entitled to equitable relief.  The Court need not address those arguments.

Restraining Order [d/e 4] is DENIED AS MOOT.  The Motion of Plaintiffs

The Kansas City Southern Railway Company and Norfolk Southern

Railway Company for a Preliminary Injunction [d/e 5] is DENIED.

ENTER: May 24, 2013

FOR THE COURT:

*s/Richard Mills*
Richard Mills
United States District Judge

23